IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                              CASE NO. 13-04867 (ESL)

BUILDERS          GROUP          &
DEVELOPMENT CORP.                                   CHAPTER 7
    Debtor

NOREEN WISCOVITCH RENTAS,                           ADV. PROC. NO. 15-00002 (ESL)
CHAPTER 7 TRUSTEE
    Plaintiff/Trustee

        vs.

JORGE RIOS PULPEIRO
    Defendant

OPINION AND ORDER

This adversary proceeding is before the court upon the *Motion for Summary Judgment* (Docket Nos. 34 and 35) filed by the Chapter 7 Trustee (hereinafter referred to as "Trustee" or "Plaintiff") and the *Opposition to Motion for Summary Judgment* (Docket No. 39) filed by Jorge Rios Pulpeiro (hereinafter referred to as "Mr. Rios" or "Defendant"). The Trustee requests that the court find that Mr. Rios is personally liable to the estate and that he be ordered to turn over $2,100,359.32 pursuant to 11 U.S.C. §542. The Defendant disputes several of the material facts asserted by the Trustee and argues that the debts that the Trustee seeks to recover do not exist and/or are unrecoverable under applicable law. In addition, Mr. Rios sustains that he is not personally liable to the estate.

For the reasons stated below, the Trustee's *Motion for Summary Judgment* is denied.

-1-

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§157(a) and 1334(b). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409. The nature of this proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(E) will be further discussed below.

Facts and Procedural Background

The Debtor filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on June 12, 2013 (lead case, No. 13-04867[1]). The procedural background of the lead case is lengthy and complex. Thus, the court will only reference dockets and events related to this adversary proceeding. The petition contains Mr. Rios' signature in his capacity as President of the Debtor (lead case, Docket No. 1, p. 3). In addition, the *Statement of Financial Affairs* indicates that Mr. Rios owned 100% of the Debtor's stock (lead case, Docket No. 16, p. 11). The Debtor included in *Schedule B* (Personal Property) $1,374,856.51 as due from affiliated companies (lead case, Docket No.15, p. 14). The amounts are itemized as follows: (i) $111,487.36 due from Affordable Housing Li; (ii) $995,060.89 due from 1959 Building Center; (iii) $221, 293.26 due from Goddess Yacth; (iv) 46,000.00 due from Ocean Walk; and (v) $615.00 due from El Senorial Assistance Living (lead case, Docket No. 15, *Schedule B*, Exhibit D, p. 18).

After several procedural events and motions, on January 10, 2014, the court granted a request by two of the Debtor's creditors to convert the case to Chapter 7. (lead case, Docket No. 197, *Minute Entry* and Docket No. 199, *Audio File*). On January 27, 2014, the *Order* converting the case to Chapter 7 was entered (lead case, Docket No. 202). On January 28, 2014, a *Notice* was entered appointing Noreen Wiscovitch Rentas as the Chapter 7 Trustee and scheduling the 341(a) meeting for March 6, 2014 (lead case, Docket No. 203).

Subsequently, on January 7, 2015, the Trustee filed three adversary proceedings: Adversary Proceeding Case Nos: 15-00001; 15-00002 and 15-00003[2]. The *Complaint* (Docket

---

[1] References to the lead case are to the entries and documents filed in the bankruptcy case, case number 13-04867 (ESL).

[2] Adversary Proceeding 15-00001 was filed by the Trustee against Affordable Housing Living, Inc., and was closed after *Judgment by Default* was entered against the defendant on March 11, 2016 (Docket No. 43 of Case No. 15-

No.1) in this adversary proceeding contains seven causes of action against Mr. Rios: (1) recovery of money in the amount of $2,100,358.32, and/or (2) fraudulent transfer pursuant to 11 U.S.C. §§544, 547 and 548; (3) preferential transfer pursuant to 11 U.S.C. §547; (4) avoidance of additional transfers pursuant to 11 U.S.C. §548; (5) rescission of transfers made in fraud of creditors pursuant to 11 U.S.C. §544(b) and Art. 1243(3) of the Civil Code of Puerto Rico; (6) Request for Declaration of Nullification of Contracts pursuant to Articles 1227 and 1228 of the Civil Code of Puerto Rico; and/or (7) Personal Liability of the Defendant (Docket No. 1). On January 14, 2015, an *Order and Notice* was entered setting a preliminary pre-trial conference on May, 29, 2015 (Docket No. 6). On February 11, 2015, the Defendant, *pro se*, filed a *Motion to Extend Time to Answer Complaint* (Docket No. 8) requesting an extension of thirty (30) days to file a response to the *Complaint* and the same was granted on February 13, 2015 (Docket No. 9). On March 17, 2015, Mr. Rios, *pro se*, filed his *Answer to the Complaint* denying several of the allegations made by the Trustee and including several affirmative defenses (Docket No. 12).

On May 22, 2015, the parties filed a *Joint Motion for Continuance of Hearing* (Docket No.13) requesting that the preliminary pre-trial be continued until the Defendant retained legal representation. On May 26, 2015, the Court entered an *Order* granting the *Joint Motion for Continuance of Hearing* and re-scheduling the hearing to September 18, 2015 (Docket No. 14). Subsequently, the court entered an *Order* re-scheduling the hearing to November 6, 2015 (Docket No. 16). On November 5, 2015, the parties filed a *Joint Motion for Leave to Waive Compliance with Order Entered on Dkt. No. 16 and Motion to Inform* (Docket No. 18) requesting that they be excused from filing a pre-trial report. On November 6, 2015, the court held a preliminary pre-trial hearing and granted the parties two hundred and ten (210) days to conclude discovery and two hundred and forty (240) days to file dispositive motions[3] (Docket No. 19, *Minute Entry* and Docket No. 20, *Audio File*).

00001). Likewise, Adversary Proceeding 15-00003 was filed by the Trustee against 1959 Building Center, Inc., and was closed after *Judgment by Default* was entered against the defendant on April 7, 2017 (Docket No. 32 of Case No. 15-00003).

[3] In addition, an attorney made an appearance on behalf of the Defendant. Thereafter, on November 20 2015, the attorney filed a *Notice of Appearance* (Docket No. 22). Subsequently, on August 17, 2016, the attorney filed a *Motion to Withdraw* (Docket No. 23) requesting to be allowed to withdraw as counsel for Defendant which was granted on

The court held a *Status Conference* on January 27, 2017 and granted the parties thirty (30) days to file dispositive motions and fourteen (14) days to reply (Docket No. 28, *Minute Entry* and Docket No. 30, *Audio File*)[4]. On February 27, 2017, the Trustee filed a *Motion for Extension of Time* (Docket No. 31) requesting an extension of ten (10) days to file a motion for summary judgment which was granted on March 1, 2017 (Docket No. 32).

On March 10, 2017, the Trustee filed the *Chapter 7 Trustee's Statement of Uncontested Facts in Support of Motion for Summary Judgment* (Docket No. 34) and *Motion for Summary Judgment* (Docket No. 35). The Trustee sustains that the Defendant owes the Debtor the total amount of $2,100,359.32, excluding interest and other charges. She declares that the CPA retained by the Trustee in the legal case[5], Mr. Albert Tamárez-Vazquez, CPA, CIRA,  reviewed the Debtor's financial documents and "concluded that the Defendant, through several corporation [*sic*] indirectly or directly controlled by him, received several sizable monetary transfers from the Debtors in the years preceding Debtor's filing of the voluntary petition. (Docket No. 35, pp.2-3, ¶9). The Trustee segregates the amounts allegedly owed as follows[6]:

  a. "Within one year preceding the Petition Date, Defendant, *doing business as* Goddess Yatch, received the amount of **$218,793.26** from the Debtor.

  b. Within one year preceding the Petition Date, Defendant, *doing business as* Ocean Walk, received the amount of **$46,400.00** from the Debtor.

  c. As a director, officer and/or shareholder of the Debtor and of the corporate affiliate entity "1959 Building Center, Inc.", Defendant received the amount of **$999,249.53** from the Debtor in the years preceding the voluntary petition excluding interest and other charges.

---

August 24, 2016 (Docket No. 24). However, it appears from the record that the Defendant later re-hired the attorney. See Docket Nos. 36, 37and 39.

[4] The court notes that no one appeared on behalf of the Defendant.

[5] See lead case, Docket Nos. 201 and 212.

[6] Attached to the Trustee's *Motion for Summary Judgment* is a Declaration by Mr. Tamarez declaring under penalty of perjury that this information is correct. See **Exhibit A** of Docket No. 35.

d. As a director, officer and/or shareholder of the Debtor and of the corporate affiliate entity "Affordable Housing Living, Inc.", Defendant received the amount of **$111,487.36** from the Debtor in the years preceding the voluntary petition, excluding interests and other charges.

e. As a director, officer and/or shareholder of the Debtor and of the corporate affiliate entity "Playa Bahia, Inc.", Defendant received the amount of **$729,429.17** from the Debtor in the years preceding the voluntary petition, excluding interest and other charges."

Moreover, the Trustee sustains that the amounts owed are reflected in the Debtor's general ledgers. See Exhibits C, F, H, J and L of Docket No. 34. The Trustee argues that the "Debtor received no consideration in return for any of the referenced amounts, nor did the affiliates ever establish any method or plan or repayment to return the owed amounts to Debtor." (Docket No. 35, pp-10-11, ¶48). Accordingly, she concludes that under Puerto Rico Law, specifically, Articles 1227, 1228 and 1255 of the Civil Code of Puerto Rico, that the "Defendant shall restore to the Debtor all the referenced amounts with interest." (Docket No. 35, p. 11, ¶48). In addition, she alleges that "pre-petition amounts of accounts receivable [*sic*] of the Debtor are property of the estate which shall be delivered to the Trustee." (Docket No. 35, p. 11, ¶51).

With regards to the Defendant's personal liability, the Trustee sustains that Mr. Rios "as the sole stockholder, President, owner and officer in control of the Debtor, perpetrated a scheme to operate (a) 1959 Building Center, Inc., (b) Affordable Housing Living Inc., and (c) Playa Bahia Inc., using and withholding funds that were property Debtor's estate, without any consideration in return for Debtor." (Docket No. 35, pp.13-14, ¶64). Based on the foregoing, the Plaintiff requests an order finding that the Defendants owes the Debtor the amounts of: "(a) **$994,249.53** owed from 1959 Building Center, Inc., (b) **$111, 487.36** owed from Affordable Housing Living Inc., and (c) **$729,429.17** owed from Playa Bahia Inc., plus interest of four percent (4%) per annum over such amounts." (Docket No. 35, p. 15, ¶74). Furthermore, Plaintiff requests that

Defendant be found personally liable for the amounts of: "(a) **$218, 793.26** owed by himself *doing business as* Goddess Yatch and (b) **$46,400.00** owed by himself *doing business as* Ocean Walk, plus interest of four percent (4%) per annum over such amounts." (Docket No. 35, p. 16, ¶75).

On March 24, 2017, the Defendant filed a *Notice of Appearance* (Docket No. 36) requesting a seven (7) day extension of time to file answer to Trustee's *Motion for Summary Judgment* which was granted on March 27, 2017 (Docket No. 37). On March 31, 2017, the Defendant filed his *Opposition to Motion for Summary Judgment* (Docket No. 39). In his *Opposition*, Mr. Rios contests several of the Trustee's facts and sustains that he is not personally liable for any of the amounts allegedly owed by the several corporations/entities. Moreover, the Defendant argues that "Debtor was a developer and its main business was to purchase properties to develop, which it later sold or operated for income. All of the above transactions are legal, valid and consideration is present in each." (Docket No. 39, p. 9). As to Mr. Rios' personal liability, he declares that "these transactions were all legal and valid transactions made with consideration at the time were for the benefit of the Debtor." (Docket No. 39, p. 11). In addition, the Defendant sustains that he "should not be held personally liable for the result of a nationwide if not global market downturn of which he had no control and consequently lost most if not all of his assets." (Docket No. 39, p. 11).

## Applicable Law and Analysis

*(A) Standard for Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

-6-

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." Wright, Miller & Kane, Federal Practice and Procedure, 3d, Vol 10A, § 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record

does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also, Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

The controversy currently before the court is two-fold: (1) has the Trustee met her burden pursuant to Section 542(a); and (2) can Mr. Rios be held personally liable for the debts owed by the entities/corporations to the estate.

*(B) Action for Turnover of Property of the Estate Pursuant to Section 542(a)*

Section 542(a) provides[7]:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542.

"The purpose of section 542 of the Bankruptcy Code is "to expand the trustee's power to 'bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced', ensuring that a broad range of property is included in the estate to promote the congressional goal of encouraging reorganizations." Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶542.01(16th ed. 2015). Thus, "[t]o support a cause of action for turnover, the trustee has the burden of proof, by a preponderance of the evidence, to establish that: (1)the property is in the possession, custody or control of a noncustodial third party; (2) the property constitutes property of the estate; (3) the property is of the type that the trustee could use, sell or lease pursuant to section 363 or that the debtor could exempt under section 522, and (4) that the property is not of inconsequential value or benefit to the estate." Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶542.03 and 542.03[1] (16th ed. 2015). Although Section 542(a) does not define the property subject to turnover, "the term is generally

---

[7] The Trustee's *Motion for Summary Judgment* (Docket No. 35) only makes reference to Section 542(a) and does not cite Section 542(b) which provides:

"(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor."

11 U.S.C. § 542(b).

understood to mean "property of the estate", as defined in Section 541[8]." Alan N. Resnick & Henry J. Sommer, 5 <u>Collier on Bankruptcy</u> ¶542.03[2] (16th ed. 2015).

In the instant case, the Trustee is seeking that the Defendant be ordered to turnover the total amount of $2,100,359.32 allegedly owed by the related entities/corporations. As to the amounts be owed by Affordable Housing Living, Inc., the court notes that a judgment by default was entered in Adv. No. 15-00001 awarding the Trustee the amount of **$111,487.40**, plus prejudgment interest at the prevailing rate of 4% (Docket No. 43 of Adv. No. 15-00001). Likewise, as to 1959 Building Center, Inc., judgment by default was entered in Ad. No. 15-00003 awarding the Trustee **$351,639.59**, plus prejudgment interest at the prevailing rate of 4% and post judgment interest at the legal rate of 6%, plus charges (Docket No. 32 of Adv. No. 15-00003). Both judgments are final. Nevertheless, although the default judgments are final, they were entered against Affordable Housing Living, Inc.[9] and 1959 Building Center, Inc., not against Mr. Rios in his personal capacity.

However, no judgment has been issued as to the amounts allegedly owed by Goddess Yatch Inc.,[10]; Ocean Walk; and Playa Bahía Inc. Therefore, as to these amounts, the court would have to find that they are owed and then proceed to determine whether the Defendant can be held personally liable. The only evidence submitted by the Trustee are the amounts as reflected in the Debtor's general ledgers. In addition, the Trustee makes reference to Articles 1227, 1228 and 1255

---

[8] Pursuant to Section 541(a) the "estate is comprised of all the following property, wherever located and by whomever held:

"(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case."

11 U.S.C. § 541.

[9] The default judgment was also entered against defendant La Trinidad Elderly L.P.S.E. (Docket No. 43 of Ad. No. 15-00001).

[10] The Trustee sustains that "as of the Petition Date, Defendant was *doing business as* Goddess Yatch…" (Docket No. 34, p. 7, ¶28). However, Mr. Rios declares that "Goddess Yatch, Inc. was a duly incorporated corporation in the State of Delaware…" <u>See</u> Docket No. 39, p. 1, ¶3(a) and *Certificate of Incorporation* attached to Docket No. 39-5. The court notes that the corporation's name as it appears in the *Certificate of Incorporation* is Goddess Yatchs, Inc.

of the Civil Code of Puerto Rico and sustains that "Debtor received no consideration in return for any of the referenced amounts, nor did the affiliate corporations ever establish any method or plan of repayment to return the owed amounts to Debtor." (Docket No. 35, pp.10-11, ¶48). Accordingly, she declares that "under Puerto Rico law, the Defendant shall restore to the Debtor all the referenced amounts, with interest." Id. Mr. Rios submits that all the transactions were "legal, valid, and consideration is present in each." (Docket No. 39, p.9). In addition, he provides an explanation for each of the transactions. See Docket No. 39, pp.9-10. For example, he describes the transaction between the Debtor and Goddess Yatch as "a purchase of stock and an investment for Debtor in exchange for a loan for a capitalization of Goddess." Id. Likewise, he declares that the amounts attributed to Ocean Walk "represents costs incurred in drawings and blueprints for a project under his name. Where Debtor investment in these documents to later develop the property and profit from its sale and/or operation." Id. As to the amounts attributed to Playa Bahia, Inc., the Defendant submits that "[t]his amount represents a loan granted by Oriental (then Eurobank) in 2008 (five years before the petition) which was granted to Debtor acting as the developer to satisfy a credit line for the acquisition by Playa Bahia, Inc. of a parcel of land with the intention of developing a real estate project." (Docket No. 39, p. 8). Mr. Rios sustains that "Debtor's bankruptcy advisor instructed to record the entry to recognize the unpaid amount of the aforementioned loan." Id.

Based on this record, this court cannot conclude that these amounts are owed. As this court has previously stated, "[i]t is important to note that an account receivable action such as this one cannot be considered a turnover of property of the estate action as long as there is some doubt as to the defendant's liability." In re Mec Steel Bldgs., Inc., 136 B.R. 606, 610 (Bankr. D.P.R. 1992).

*(C) Piercing the Corporate Veil*

Nevertheless, even if the court assumes that all the amounts are owed by the different corporations, to succeed in the instant adversary proceeding the Trustee has to prove that the Defendant is personally liable for said amounts. The Trustee filed the instant adversary proceeding against Mr. Rios, not against Goddess Yatchs, Inc., or Playa Bahia Inc. Likewise, the default judgments already entered are against 1959 Building Center, Inc., and Affordable Housing Living, Inc., not against Mr. Rios. Thus, the adversary proceeding hinges on whether Mr. Rios is personally liable.

The imposition of personal liability is governed by state law. In re Aoki, 323 B.R. 803, 811 (B.A.P. 1st Cir. 2005) ("The existence and legal characteristics of a corporation are governed by state law."). "Under Puerto Rico law, corporations are presumed to be legal entities separate from their officers, directors, and shareholders." Nieto-Vincenty v. Valledor, 22 F. Supp. 3d 153, 162 (D.P.R. 2014) (citations omitted). The Supreme Court of Puerto Rico has declared that courts may hold stockholders liable for the debts of corporations when:

> "[T]he corporation is the mere "alter ego" or business conduit of its only stockholders, with the benefits produced by the corporate business accruing exclusively and personally to them, . . . if it is necessary to prevent fraud or the accomplishment of an illicit purpose, or to prevent an injustice or a wrong."

D.A.Co. v. Alturas Fl. Dev. Corp. y otro, 1993 WL 840226 (P.R. Mar. 9, 1993), quoting Cruz v. Ramírez, 75 D.P.R. 947, 954 (1954). "[A] corporation is the alter ego or business conduit of its stockholders when there is such unity of interest and ownership that the personalities of the corporation and the stockholders--whether natural or artificial persons--are intermingled and, as a result, the corporation actually is not a separate and independent entity." Id. However, "[a]pplication of this principle shall depend on the specific facts and circumstances of each case, in the light of the evidence presented." Id. The party seeking to pierce the corporate veil bears the

burden of proof and must prove "that there is no adequate separation between the corporation and the stockholder, and that the facts are such that acknowledging said legal personality would be tantamount to "sanctioning fraud, promoting injustice, evading a legal obligation, defeating public policy, justifying inequity, protecting fraud, or defending crime." Id. (citations omitted). The burden "is not met by simply alleging that the corporation is an alter ego of a person, but with concrete evidence that there was no adequate separation between the personalities of the corporation and the stockholders." Id. Lastly, the evidence presented by the party seeking to pierce the corporate veil must be "strong and robust." Gonzalez v. San Just Corp., No. R-71-177, 1973 WL 35683, at *2 (P.R. Feb. 5, 1973); Situ v. O'Neill, 124 F. Supp. 3d 34, 50 (D.P.R. 2015), reconsideration denied, 2015 WL 5671162 (D.P.R. Sept. 25, 2015) ("The party seeking to pierce the corporate veil has the burden of producing "strong and robust evidence" that the corporate form should be disregarded.") (citations omitted).

The Trustee has failed to submit any evidence, much less "strong and robust" evidence of the kind required for this court to find that facts and circumstances of this case warrant the piercing of the corporate veil. The Plaintiff's *Motion for Summary Judgment* simply alleges that Mr. Rios was the officer in charge of the corporations or that the he was/remains the director, incorporator and/or sole shareholder. Accordingly, the court finds that the Trustee has failed to meet her burden and the Trustee's request for summary judgment is denied. Harley-Davidson Credit Corp. v. Galvin, 807 F.3d 407, 411 (1st Cir. 2015) ("When the movant bears the burden of proof at trial, he must demonstrate every element of his case such that "no reasonable trier of fact could find other than for [him].") (quoting Lopez v. Corporación Azucarera de P.R., 938 F.2d 1510, 1516 (1st Cir.1991)).

*(C) Jurisdiction*

This court's jurisdiction has not been questioned by either party. However, "[i]t is

universally accepted that federal courts have the power to determine their own jurisdiction. This is true, also, of the ability of bankruptcy courts to determine their authority to finally determine proceedings." Alan N. Resnick & Henry J. Sommer, 1 Collier on Bankruptcy ¶3.02[6][a](16th ed. 2015).

The court notes that it has previously held that "[a]ctions initiated in the bankruptcy court to collect pre-petition account receivables are clearly non-core matters and should not be considered as matters affecting the administration of the estate or actions for the turnover of property of the estate in order to categorize them as core." In re Mec Steel Bldgs., Inc., 136 B.R. at 609. In addition, this court declared that "[t]urnover proceedings are core matters when their purpose is to collect a debt rather than create it, recognize it or liquidate it." Id. at 610.

Furthermore, following the decision of the Supreme Court of the United States in Stern v. Marshall, 564 U.S. 462, 131 S. Ct. 2594,180 L. Ed. 2d 475 (2011), this court declared:

> "Turnover disputes are core proceedings pursuant to Section 157(b)(2)(E) of the Code of Judiciary and Judicial Procedure, 28 U.S.C. § 157(b)(2)(E). Still, as previously discussed, that is not enough for this court to be able to issue a final determination on the controversy: "the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern v. Marshall, supra,* 131 S.Ct. at 2618."

In re Garcia, 471 B.R. 324, 330 (Bankr. D.P.R. 2012). This is so because "following *Stern*, the relevant determination no longer is whether a proceeding is core or related, but whether the proceeding, be it core or related, can be finally determined by the bankruptcy court." Alan N. Resnick & Henry J. Sommer, 1 Collier on Bankruptcy ¶3.02[6][a] (16th ed. 2015). As stated above, this proceeding hinges on piercing the corporate veil, a state law claim. See In re Tolomeo, 537 B.R. 869, 872–73 (Bankr. N.D. Ill. 2015), adopted sub nom. In re: Tolomeo, No. 15 C 8118, 2015 WL 8741730 (N.D. Ill. Dec. 15, 2015) ("Although turnover orders are statutorily defined as core matters under 28 U.S.C. § 157(b)(2)(E), the Plaintiffs' turnover action in this case is predicated

-14-

upon alter ego and veil-piercing theories of liability under Illinois law. Under *Stern,* alter ego and veil-piercing are not issues that "stem[ ] from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern,* 131 S.Ct. at 2618.)

Accordingly, the court hereby orders the parties to submit within thirty (30) days their positions as to whether this matter is a core-or non-core matter and/or whether the court can issue a final determination in this adversary proceeding[11]. See 28 U.S.C. §157.

### Conclusion

For the reasons stated herein, the court finds that the Trustee has failed to meet the requirements of Section 542(a). In addition, there are material facts in controversy. Moreover, even assuming that all the amounts requested by the Trustee are owed, she has failed to submit "strong and robust" evidence of the kind required to pierce the corporate veil. Therefore, the Trustee's *Motion for Summary Judgment* (Docket Nos. 34 and 35) is hereby denied.

Furthermore, the court hereby orders the parties to submit within thirty (30) days their positions as to whether this matter is a core-or non-core matter and/or whether the court can issue a final determination in this adversary proceeding.

SO ORDERED.

In San Juan, Puerto Rico, this 15th day of December, 2017.

Enrique S. Lamoutte
United States Bankruptcy Judge

---

[11] The court notes that in the *Complaint* the Trustee alleged that "[t]his is a core proceeding as defined by 28 U.S.C. §157(b)(2)(E) and (F)." See Docket No.1, p. 4, ¶4.  Mr. Rios stated in response in his *Answer to the Complaint* as to paragraph four "[t]his statement does not require an answer. If it did, it is denied." See Docket No. 12, p.1, ¶4.

-15-